in the case that the jury should determine from all the evidence what were those ultimate relations of the receiver and Ryan to each other with respect to the receiver's right of action. The court charged the jury as follows:

"The receiver can recover in this action that amount of money, or any amount of money, only upon having proved to you to your satisfaction, by a preponderance of evidence which you credit, that the stone was quarried on the order of Shanly & Ryan, and that the plaintiff (that is, the receiver —the company before him and the receiver after) was always ready and willing to deliver it under the very terms of the contract."

There can be no mistake respecting what was meant by that instruction, for after the case had been submitted to the jury, and they retired, they sent to the court the following request, namely:

"The jury requests to know whether they can consider the intention of carrying out the contract, or whether they must exclusively abide by the written wording of the contract, and render their verdict accordingly. James K. Gallagher, Foreman."

To which the court returned the following answer:

"The parties having embodied the terms of their agreement in writing, it is to be assumed that the instrument expresses and legally implies their intention."

That instruction was erroneous, and altogether misleading. The importance attached to it is manifested by the inquiry of the jury. They were bound by the instruction, which held the Cobleskill Company and the receiver to the very words of the original contract respecting the delivery of the stone at the city of New York, while there was evidence from which the jury could have found that that term of the contract, at least, had been abandoned by Ryan. They were required to ignore everything that had been done, and to confine themselves to the strict letter of a contract, which both parties seem to have regarded as no longer literally in force.

. The instruction is fatal to the verdict and the judgment, and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur; McLAUGHLIN, J., in result.

---

(46 Misc. Rep. 328.)

GRIFFIN v. INTERURBAN ST. RY. CO.

(Supreme Court, Trial Term, New York County. February, 1905.)

1. STREET RAILROADS—NEGLIGENCE—DEFECTIVE TRACKS—NOTICE.
    Where, by the construction of a subway beneath the roadbed of a street railway, a trolley slot thereon would spread at times about an inch for a distance of two feet, and a bicycle rider was injured because thereof, and the evidence showed that the slot was safe up to within a short time prior to the accident, the street railway company was not chargeable with notice of the condition, so as to make it liable on the theory of negligence.
    [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railways, §§ 183–185.]

2. STIPULATION—ADMISSIONS.
    . Where, in an action against a street railway for injuries to a bicycle rider caused by the spreading of the slot in the track, a stipulation by

defendant, admitting that it maintained the slot on which plaintiff was riding when injured, is not an admission that it was responsible for the condition of the slot at the time of the accident.

3. STREET RAILROADS—DEFECTIVE TRACK—INJURY TO BICYCLE RIDER.

Where a street railway company was sued for injuries to a bicycle rider by the spreading of the slot in the track, it could show under the general denial that it was not responsible for the spreading of the slot, which was the cause of the accident.

4. TRIAL—DIRECTING VERDICT.

Where at the close of the trial both parties request the direction of a verdict, any question of fact which the evidence may present is submitted to the court.

Action by Henry P. Griffin against the Interurban Street Railway Company. Motion by plaintiff for direction of a verdict, and motion by defendant for a dismissal. Decision reserved until assessment of damages, and complaint dismissed.

John David Lannon, for plaintiff.

Henry A. Robinson (Daniel W. Patterson, of counsel), for defendant.

COCHRANE, J. The plaintiff was riding a bicycle down Broadway, in the city of New York, on the 10th day of April, 1902. He was riding on a "slot" which was maintained by the defendant as a necessary part of its system in the operation of its cars along the street in question, and which consisted of an opening between the rails of the track, through which the electric power was transmitted for the purpose of propelling the cars. On arriving at a point between Seventieth and Sixty-Ninth streets the front wheel of his bicycle was precipitated into the aperture or slot on which he was riding, and he was thrown to the ground and received injuries. The width of the slot was generally about seven-eighths of an inch, but for about 2 feet at the place of the accident the width was 1¾ inches, and it was this unusual width at the point in question which permitted the wheel of the plaintiff's bicycle to sink into the aperture, thus causing the accident.

At the time and at the place of the accident the rapid transit subway was in process of construction, and it appeared on the trial that the street had been excavated underneath the place of the accident, and a substructure had been erected, on which the track or roadbed of the defendant rested. It was also established that in the work of blasting, excavating, and otherwise in connection with the subway construction, the aperture in the slot would sometimes open and close at different places, and that such changes would sometimes take place instantly. The plaintiff called as a witness Michael J. Fitzgerald, who testified that he had often ridden over the slot in question at the place of the accident; that he could not tell exactly how long prior to the accident, but that it was probably a week, and that it might have been only two days. There is therefore no liability on the part of the defendant because of any defect in the original construction of the slot, as was the case in Brown v. Metropolitan St. R. Co., 60 App. Div. 184, 70 N. Y. Supp. 40. Up to a comparatively short time before the acci-

dent, plaintiff's witness Fitzgerald, with the same kind of a bicycle as that used by the plaintiff, had ridden in safety over the identical place which caused the plaintiff's accident. . Plaintiff did not attempt to show what caused the spreading of the slot, and from the evidence introduced by the defendant it is a necessary conclusion that such condition was produced by the work of the subway construction.

On the trial, counsel for the plaintiff declined to specify whether his theory of the action was nuisance or negligence. I do not think he can recover on either theory. The defendant was not responsible for the condition of the slot which caused the accident. The defendant, by stipulation, admitted that it maintained the trolley slot on which the plaintiff was riding when he met with his accident. And the uncontroverted allegation of the complaint is that "a necessary part of the said track is an aperture or opening called the 'slot.'" The defendant admitted that it maintained this slot, but it did not admit that it was responsible for or maintained the slot in the condition in which it was at the time and place of the accident. The fallacy of the plaintiff's argument consists in assuming that the defendant admitted the existence of the slot in its abnormal and unnatural condition. The defendant, under the general denial of its answer, was at liberty to show that it did not cause and was not responsible for the spreading or widening of the slot which was the cause of the accident. In other words, the defendant admitted the lawful opening in the street, but denied that it made or continued the unlawful or wrongful opening therein; and the defendant was entitled, under its answer, to prove that it was not responsible for and did not maintain such unlawful opening. Irvine v. Wood, 51 N. Y. 224, 10 Am. Rep. 603; Clifford v. Dam, 81 N. Y. 52; Brown v. Metropolitan St. R. Co., 60 App. Div. 184, 70 N. Y. Supp. 40.

It conclusively appearing from the plaintiff's case that the place in question was safe up to within a short period prior to the accident, no case was made out against the defendant either on the theory of a nuisance, or on the theory of negligence, without showing that the defendant had notice of the dangerous condition of the street, or was chargeable with notice thereof. In view of the fact that only a short time prior to the accident the plaintiff's witness, with the same kind of a bicycle, had passed over the place in safety, and considering the nature of the work which was being performed beneath the defendant's track, and that such work caused frequent and sudden changes in the aperture of the trolley slot, it cannot be said that the defendant was chargeable with notice of a slight widening of less than one inch in the aperture of the slot for a distance of only about two feet. Plaintiff, riding on the slot during the daytime, saw nothing to warn him of danger, and the circumstances in this case are not such as to charge the defendant with notice of the condition which caused the accident.

The parties, by their motions made at the close of the trial, treated the action as involving only questions of law, and are deemed to have submitted to the court for its determination any question of

fact which the evidence may present. Dillon v. Cockcroft, 90 N. Y. 649; Guenther v. Amsden, 16 App. Div. 607, 44 N. Y. Supp. 982. If any question of fact exists in this case, it should be determined in favor of the defendant.

Complaint dismissed.